IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QUALITY SAUSAGE COMPANY, LLC, HM INTERNATIONAL LLC, GREGORY R. GEIB, AND KATHRYN M. GEIB, | § § § § | |
| *Plaintiff* | § § | CIVIL ACTION NO. 4:17-cv-111 |
| v. | § § | |
| TWIN CITY FIRE INSURANCE CO., | § § | |
| *Defendant.* | § § | |

## TWIN CITY'S MOTION FOR SUMMARY JUDGMENT ON HMI'S REMAINING CLAIMS

HMI's only remaining claims are that Twin City breached its alleged duty to defend and violated extra-contractual duties allegedly owed. Because the summary judgment evidence conclusively establishes that Twin City cannot be liable under either claim, Twin City is entitled to summary judgment, finally disposing of all claims in this lawsuit.[1]

### SUMMARY OF ARGUMENT

The Fifth Circuit recognizes an exception to the eight corners rule, allowing consideration of extrinsic evidence if the third party claimant's demand is not sufficient to enable a coverage determination, provided that the extrinsic evidence goes to coverage and not the insured's liability to the third party claimant. That is precisely the situation here. Twin City could not determine whether coverage was invoked from the face of the two-page demand letter, so it requested HMI to provide additional information that relates to coverage, not liability. HMI

---

[1] Twin City previously submitted a response to HMI's memorandum on the duty to defend [Dkt. 75] in response to the Court's August 24, 2018 order [Dkt. 72]. This supplement's Twin City's earlier briefing on the duty to defend, with additional authority and analysis establishing of the absence of any duty to defend.

provided the information which confirmed that the third party's demand letter fell entirely within two policy exclusions, leaving no possibility for coverage. HMI's claim that Twin City owed and breached a duty to defend fails as a matter of law.

Moreover, in the context of a request for coverage in relation to a third party claim, the only extra-contractual duty under well-established Texas law is in the *Stowers* context. HMI does not argue that Twin City breached a *Stowers* duty. Instead, it argues that Twin City violated the Texas Insurance Code. However, under the Texas Insurance Code, the tender of the underlying third party claim does not constitute a "claim" for purposes of the statute. Accordingly, HMI's extra-contractual claims fail as a matter of law.

**EXHIBITS**

| | |
|---|---|
| Exhibit A: | Private Choice Ovation$^{SM}$ Policy No. 61 KB 0287302-14. |
| Exhibit B: | Excerpts from the deposition of Tamara Rains. |
| Exhibit C: | January 20, 2015, letter from Michael Branley of Fidelity Claims Manager to Tamara Rains of HMI dated January 20, 2015. |
| Exhibit D: | May 15, 2015, letter from Tamara Rains to Michael Branley attaching Todd Donohue's April 28, 2015, demand letter. |
| Exhibit E: | May 21, 2015 letter from Wendy Millman to Tamara Rains. |
| Exhibit F: | August 3-4, 2015, email chain between Michael Knox and Tamara Rains. |
| Exhibit G: | August 10, 2015, email from Anne Smalling to Michael Knox attaching supporting requested information, including Administrative Service Agreement dated January 1, 2012, between HMI and Greg and Kathy Geib. |
| Exhibit H: | October 1, 2015, letter from Michael Knox to Tamara Rains. |
| Exhibit I: | Excerpts from the deposition of Michael S. Knox. |
| Exhibit J: | Affidavit of Michael Knox. |
| Exhibit K: | Excerpts from the deposition of Gregory Geib. |

**FACTUAL BACKGROUND**

Twin City issued a Private Choice Ovation<sup>SM</sup> Policy bearing Policy No. 61 KB 0287302-14, effective November 1, 2014, to November 1, 2015 (the "Policy") naming HMI as an insured and including Directors, Officers and Entity Liability Coverage ("D&O Form") and Crime Coverage ("Crime Form"). Exhibit A. The Policy has several important exclusions.

First the "Services for a Fee" exclusion that states:

> The Insurer shall not pay loss: . . . In connection with any Claim *based upon*, *arising from*, or *in any way related* to any actual or alleged: . . . rendering of, or failure to render any services for or on behalf of others for a fee, including, without limitation, services performed by or on behalf of the Insureds for or on behalf of a customer or client.

Exhibit A at TC 000647 (emphasis added).[2]

Second, the "Contractual Liability" exclusion that states:

> The insurer shall not pay Loss . . . in connection with any Claim *based upon*, *arising from*, or *in any way related* to any actual or alleged . . . liability under any contract or agreement, provide that this exclusion shall not apply to the extent that liability would have been incurred in the absence of any such contract or agreement.

*Id*. at TC 000649 (emphasis added).

And third, the "Insured versus Insured" exclusion states:

> The insurer shall not pay Loss . . . in connection with any Claim brought or maintained by or on behalf of any Insureds (in any capacity)…

*Id*. at TC 000648.

---

2   Importantly, "Texas courts have broadly construed the phrase "'aris[ing] out of [or] . . . related to or . . . in connection with.'" *McGinnis v. Union Pacific R. Co*., 612 F.Supp.2d 776, 788 (S.D. Tex. 2009); *see also Utica Nat'l Ins. Co. v. American Indem. Co*., 141 S.W.3d 198, 203 (Tex. 2004) ("'arise out of' means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation"); *Scottsdale Ins. Co. v. Texas Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999) (phrase "arising out of" means that "a claim need only bear an incidental relationship to the described conduct").

On January 15, 2015, HMI reported a claim to Twin City under the Crime Form related to a wire transfer made by HMI in the amount of one million dollars ($1,000,000) from its client Kathryn Geib's personal bank account to a separate Bank of America account. Exhibit B at 31:2–9; 31:22-32:13. Twin City promptly acknowledged the notice under the Crime Form, requested additional information from HMI, and reserved all rights under the Policy. Exhibit C.

After acknowledging the claim, Twin City did not hear from HMI again until approximately May 15, 2015, when Tamara Rains, HMI's Chief Financial Officer, forwarded a demand letter dated April 28, 2015 ("Demand Letter") that was sent to HMI on behalf of Mr. Geib, demanding reimbursement of the funds transferred as a result of HMI's incorrect authorization. Exhibit D. HMI requested coverage for the Demand Letter under the D&O Form of the Policy and requested that Twin City defend against it, if necessary. *Id.* at TC 000601.

The Demand Letter states that "HM International's failure to communicate with Mr. Geib, its lack of proper controls and failure to detect irregularities in the fictitious emails which led to the wire transfer have caused Mr. Geib a substantial financial loss." *Id.* at TC 000602. Further, Mr. Geib alleged the following:

> First, HM International had insufficient controls in place to safeguard Mr. Geib's assets. HM International effectuated the transfer of $1,000,000.00 from the JP Morgan Account without any effort to authenticate his identity or the validity of the wire transfer request…When Mr. Geib made similar wire transfer requests in his past dealings with HM International, the transaction involved a telephone conversation with Mr. Geib, which would confirm his identity and the validity of the subject wire transfer . . . Second, the email request to transfer funds in the amount of $1,000,000.00 to Amlear LLC should have raised suspicions or triggered fraud controls within HM International. Transactions of this magnitude were not commonly requested by Mr. Geib. However, when such a transfer was made by Mr. Geib, it customarily involved the same group of accounts.

*Id.*

Twin City acknowledged the Demand Letter on May 21, 2015, and commenced its

4

3111522

coverage analysis. Exhibit E. Twin City could not initially discern whether the Demand Letter implicated coverage under the D&O Form because it did not provide sufficient information about the parties' relationship or the basis for HMI's duty to execute wire transfers. Exhibit J. Although the Demand Letter made clear that HMI had an ongoing relationship with the Geibs and that HMI had authority to transfer large sums of money, it failed to provide sufficient information as to the relationship that would allow HMI to provide these services. *Id.;* Exhibit D. Therefore, Twin City needed additional information to confirm whether the claim was potentially covered or excluded under the "Services for a Fee" and "Contractual Liability" exclusion cited above. Exhibit J.

Twin City asked HMI, its insured, to provide "the contract under which HMI was providing services to Geib when the wire transfer was made," and to describe the fees paid by the Geibs to HMI for its services. Exhibit F. In response, on August 10, 2015, HMI provided an Administrative Services Agreement (the "Agreement") between HMI and the Geibs, pursuant to which HMI provided the Geibs with accounting and financial services. Exhibit G at TC 000345-347. Under the Agreement, HMI also agreed to provide "any other services reasonably requested" by the Geibs in the Agreement. *Id.* at TC 000345. Importantly, at the time the Demand Letter was tendered and Twin City requested additional specific information, HMI never denied or disputed the existence of either a contract or payment for services by the Geibs to HMI. Exhibit J.

Because the information HMI supplied demonstrated the Demand Letter fit entirely within the "Services for a Fee" and "Contractual Liability" exclusions, Twin City issued a letter to HMI on October 1, 2015, denying coverage for the Demand Letter. Exhibit H. Besides the Demand Letter, the denial of coverage was made solely in reliance on the information provided

5

by HMI at the time. Exhibit G; Exhibit J. HMI sued Twin City.

This Court has already determined that that Policy does not respond to HMI's request for indemnity—*i.e.*, money that it paid to the Geibs to resolve their time-barred claim. [Dkt. 72] With respect to HMI's claim that Twin City breached the duty to defend, HMI has stipulated that it has no damages, i.e., defense costs that could ever serve as the basis for a breach of contact claim. Nevertheless, in an end-run attempt to circumvent the Court's ruling that Twin City is not on the hook for the settlement funds that HMI paid to the Geibs, HMI has concocted a specious argument that its breach of the duty to defend claim somehow enables recovery of indemnity dollars. This position fails for many reasons, foremost—Twin City never owed a duty to defend in the first place.

**ARGUMENTS AND AUTHORITIES**

**I.    Twin City had no duty to defend HMI and did not breach the Policy.**

The Policy provides that Twin City has the right and duty to defend HMI against <u>covered</u> claims. Exhibit A at TC 000634. HMI provided information to Twin City that demonstrated that the facts and circumstances addressed by and giving rise to the Demand Letter fell squarely within two Policy exclusions and thus, the Demand Letter did not constitute a covered Claim. Exhibit G. Therefore, HMI did not breach the duty to defend as no duty existed.

    A.    **The eight corners rule and the exception to the rule.**

Generally, Texas follows the "eight corners" or "complaint allegation" rule, whereby an insurer's duty to defend is ascertained solely by reference to the factual allegations made in the most recent pleadings of the underlying suit and to the language of the insurance policy itself. *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex. 2002). The Fifth Circuit has applied the

6
3111522

"eight corners" analysis to a demand letter. *Spec's Family Partners, Ltd. v. Hanover Ins. Co.*, 739 F. App'x 233, 238 (5th Cir. 2018).

Courts recognize an exception to the eight corners rule allowing the consideration of extrinsic evidence when it is initially impossible to discern whether coverage is potentially implicated and the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case. *See Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 476 (5th Cir. 2009) (applying the exception to determine whether the policy's "Fellow Employee" exclusion applied because the extrinsic evidence related to coverage).

Further, extrinsic evidence is more likely to be considered when an "explicit policy coverage exclusion clause" is at issue. *Star-Tex Res., L.L.C. v. Granite State Ins. Co.*, 553 F. App'x 366, 371–72 (5th Cir. 2014) (citing *Liberty Mut. Ins. Co. v. Graham,* 473 F.3d 596, 603 (5th Cir. 2006)); *see also Ooida*, 579 F.3d at 476 (considering extrinsic evidence in relation to a fellow-employee exclusion); *W. Heritage Ins. Co. v. River Entertainment,* 998 F.2d 311, 314–15 (5th Cir. 1993) (considering extrinsic evidence in relation a liquor-liability exclusion); *Int'l Serv. Ins. Co. v. Boll,* 392 S.W.2d 158, 160-61 (Tex. App. 1965) (considering extrinsic evidence relating to an exclusion in an auto policy); *W. Heritage Ins. Co,* 998 F.2d at 314–15 (considering extrinsic evidence relating to an exclusion for the service of alcohol to an intoxicated person).

**B.      Extrinsic evidence establishes that Twin City did not owe a duty to defend.**

1.      *The "Services for a Fee" and "Contractual Liability" exclusions.*

Here, the Demand Letter did not explain why the Geibs would have provided wiring instructions to HMI or what authority HMI had to wire one million dollars ($1,000,000) for the Geibs. Exhibit D; Exhibit I at 43:19-44:15; Exhibit J. Thus, it was unclear whether HMI and the

7

Geibs had a contract for services and whether the Geibs paid HMI for the wire transfer services—information that would potentially invoke the Services for a Fee and the Contractual Liability Exclusions. Exhibit J, I at p. 44:9-16; 50:15-25. Thus, Twin City properly requested additional information as to the relationship between the Geibs and HMI and the existence of any contract pursuant to which HMI was providing services to the Geibs at the time of the wire transfer. Exhibit F, J.

The limited information contained in the two-page Demand Letter, indicated and suggested that HMI and the Geibs had an ongoing relationship because it described how HMI had performed numerous wire transfers for the Geibs in the past – clearly implicating a relationship that would form the basis of liability. *See* Exhibit D. Twin City did not understand why the Geibs would have provided wiring instructions to HMI or what authority HMI had to wire one million dollars ($1,000,000) for the Geibs. Such information was not contained in the Demand Letter, which only raised more questions than it answered. *See* Exhibit F; Exhibit I at 43:19-44:15; Exhibit J.

HMI responded through its President, Ann Smalling, by providing the Agreement and explaining the relationship between the parties—that HMI was formed to provide services to families like the Geibs and that HMI had in fact been providing such services to the Geibs for almost 25 years in exchange for a fee. Exhibit G. This information related solely to fundamental issues of coverage that did not overlap with the truth or falsity of the allegations by Mr. Geib regarding the unauthorized transfer of funds. As such, it is properly considered by Twin City.

The evidence provided by HMI conclusively invoked the "Services for a Fee" and "Contractual Liability" exclusions. Exhibit G. Specifically, HMI identified the fees paid by the Geibs for its services, thereby demonstrating the Geibs' loss related to or arose from the

provision of services by HMI to the Geibs for a fee. *Id.* HMI also produced the Agreement as the contract under which HMI was providing services when the wire transfer occurred, triggering the Contractual Liability exclusion for loss arising from or related to liability under a contract. *Id.*

By providing the Agreement in response to Twin City's direct request for the contract governing the wire transfer at issue, HMI demonstrated and confirmed that it was providing services for a fee to the Geibs at the time of the wire transfer. Based upon, and relying on the very information provided by its insured, HMI, Twin City properly denied coverage for the Demand Letter based upon the "Services for a Fee" and "Contractual Liability" exclusions on October 1, 2015. Exhibit H.

Accordingly, Twin City does not owe HMI a duty to defend, it properly denied coverage for the Demand Letter, and HMI's claim that Twin City breached the policy by not providing a defense fails as a matter of law.

2. *The "Insured versus Insured" exclusion.*

Although the Court need not reach the "Insured versus Insured" exclusion, it too removes any possibility of coverage. Specifically, the evidence shows that Mr. Geib sat on the board of Quality Sausage Company, LLC, an Insured Entity. Exhibit K at 30:6-21; 31:4-11. The Policy, however, excludes Loss in connection with any Claim brought or maintained by or on behalf of any Insureds. Exhibit A at TC 000648 (H). Mr. Geib is an Insured under the Policy[3] because he served as an advisory director, board observer, or advisory board member of an Insured Entity. Mr. Geib is an Insured under the Policy based upon his involvement with Quality Sausage Company, which invokes this additional exclusion.

---

[3] The Policy defines an "Insured Person" under the Director and Officer Form as a "Manager" or "Employee." Exhibit A at TC000644 . In turn, a "Manager" is defined under the II. Common Definitions of the Policy, in relevant part as "any natural person who was, is or shall become a(n) . . . advisory director, board observer, advisory board member . . . of an Insured Entity; *Id*. at TC 000630.

9

3111522

## II. Twin City cannot be liable for first-party extra-contractual claims in this third-party lawsuit as a matter of law

HMI relies on *Menchaca* to support its extra-contractual claims against Twin City, but *Menchaca* involves a first-party claim and is inapplicable to this third-party claim. *See USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 485 (Tex. 2018).

The Texas Insurance Code defines "claim" to mean "a *first-party claim* that: (A) is made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract; and (B) must be paid by the insurer directly to the insured or beneficiary." TEX. INS. CODE § 542.051 (emphasis added). In the context of a third party claim, the only duty owed by an insurer outside the insurance contract is a Stowers duty. *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex. 2007).

The claim at issue in this lawsuit is a third-party claim, not a first party claim. HMI does not seek recovery for its own loss. Rather, HMI seeks coverage for injuries sustained by the Geibs, a third-party claim. Therefore HMI's reliance on *Menchaca*, regarding a first party claim, is misplaced. *See* 545 S.W.3d at 485. The claims handling and independent injury analysis discussed in *Menchaca* arises in the context of a first party loss. Therefore, HMI's first-party extra-contractual claims fail as a matter of law because this is a third-party liability claim. Moreover, Twin City cannot be liable for any extra-contractual claim where is did not breach the Policy.

### CONCLUSION

For these reasons, Twin City Fire Insurance Company respectfully requests that this Court grant its Motion for Summary Judgment, find as a matter of law that Twin City did not breach any duties to its insured, dismiss HMI's remaining claims and for such other to which it is justly entitled.

Respectfully submitted,

CHAMBERLAIN, HRDLICKA, WHITE,
 WILLIAMS & AUGHTRY.

By:     */s/ Christine Kirchner*
      CHRISTINE KIRCHNER
      Attorney-in-Charge
      State Bar No. 00784403
      1200 Smith Street, Suite 1400
      Houston, Texas 77002
      Telephone: (713) 658-1818
      Telecopier: (713) 658-2558
      c.kirchner@chamberlainlaw.com

## **CERTIFICATE OF SERVICE**

      I do hereby certify that on this 17th day of December 2018 the foregoing was filed in this matter via the Court's CM/ECF system, which will electronically notify all counsel of record of the filing.

                                       /s/ *Christine Kirchner*
                                       Christine Kirchner